IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROY FAIRWELL,

      Plaintiff,                    No. CIV S-10-1064 FCD GGH P

    vs.

M. CATES, et al.,

      Defendants.        <u>ORDER</u>

_____/

        Plaintiff is a state prisoner proceeding pro se. He seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Plaintiff was originally part of a group of prisoners who filed a joint action in case CIV S-10-0719 GGH. The claims were severed and each plaintiff was instructed to file an individual complaint. Plaintiff has filed the instant first amended complaint (FAC).

        Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

        Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). No initial filing fee will be assessed at this time. 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial

1

partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969).

Plaintiff names approximately 19 defendants and alleges many instances where the ability to practice his religion, Asatru/Odinism, was infringed upon. Plaintiff also sets forth claims of retaliation, violations of the American with Disabilities Act (ADA) and improper handling of inmate appeals. Plaintiff's first amended complaint will be dismissed with leave to file a second amended complaint within twenty-eight days of service of this order. Failure to file a second amended complaint will result in a recommendation that this action be dismissed.

Plaintiff's retaliation claims are based on another prisoner who practices Asatru/Odinism and filed a staff complaint against several defendants. Plaintiff then alleges that defendants retaliated against plaintiff. It is not clear what the staff complaint consisted of, or if it involved plaintiff. Plaintiff has not engaged in any protected conduct, though he says it has resulted in a 'chilling' effect for any future litigation he may file. Plaintiff also has additional claims of retaliation against other defendants that involve verbal harassment or in other instances plaintiff has failed to provide sufficient facts to identify the retaliation. All these claims are insufficient and dismissed with leave to amend.

With respect to the ADA claims, plaintiff alleges that defendants have not provided adequate seating with back support for him and other elderly or disabled people. Plaintiff states that he is disabled and has trouble walking and sitting for long periods of time. However it is difficult to discern what plaintiff requires for his alleged disability as opposed to what he wants for other practitioners of his religion that are not a party to this action. Plaintiff

must provide additional information concerning his disability to show that he is a qualified individual and not discuss other prisoners who may be disabled.

Plaintiff's allegations regarding the ability to practice his religion are quite numerous. In the majority of the individual alleged violations in the complaint, plaintiff describes an example where his religious practices were infringed, but then attributes the violation to various defendants without describing how anyone was involved. For example, plaintiff alleges that defendants Martel, Long, Jackson, Lackner, Minnick, Petersen and Kaplan using their authority have obstructed plaintiff's access to religious property. FAP at 15. These types of allegations against multiple defendants with no specificity are repeated throughout the complaint. While this claim, with more specific information, may state a viable claim, plaintiff fails to identify which defendant obstructed his ability to access religious property or how. Simply saying that seven defendants prevented him from accessing religious property is insufficient. The court will not order service on nearly 20 defendants if there may be only allegations against a few of them. It is plaintiff's responsibility to identify how the individual defendants are connected to the alleged constitutional deprivation. Simply listing perceived violations and numerous defendants will not suffice. In addition, the majority of plaintiff's claims involve highlighting discrepancies of how he perceives that other religions are treated better than his religion.

Plaintiff has brought numerous claims under The Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment right to the free exercise of religion.

Plaintiff is informed that defendants are not responsible for duplicating every religious benefit provided to other religions so that all religions are treated exactly the same. As the Supreme Court stated in Cruz v. Beto, 405 U.S. 319, 322, n.2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972):

\\\\\

> We do not suggest . . . that every religious sect or group within a prison-however few in number-must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.

Application of the standard set forth in Cruz does not require "strict numerical analysis" or "create a system of ratios or quotas." Thompson v. Commonwealth of Ky., 712 F.2d 1078, 1081 (6th Cir. 1983) (upholding grant of summary judgment on Muslim inmates' request for access to chapel comparable to Christian inmates).

Under the Cruz standard, described above, defendants must provide plaintiff a "reasonable opportunity" to practice his religion in a manner "comparable" to the other inmates.

For example, plaintiff concedes that prison officials have provided him an outdoor space for religious services. FAC at 13. However, the outdoor space is near the handball court and at times the handball strays off the court and interferes with plaintiff's religious services. Id. While there is a fence, plaintiff alleges violations of his ability to practice his religion because defendants have not built a higher fence or provided a different outdoor area. Id.

RLUIPA harassment is a two way street. Just as correctional officials can be responsible for violating prisoners ability to practice religion, prisoners can use RLUIPA and the First Amendment to harass correctional officials with frivolous claims. Not every decision by correctional officials will violate a prisoners ability to practice his or her religion, nor must every religion be given the exact same resources.[1] If plaintiff files a second amended complaint he should focus on legitimate instances where his ability to practice his religion was burdened and not provide a lengthy list describing the different resources provided to other religions.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes

---

[1] Plaintiff also takes issue with Native American religions being given their own grounds that are 2664 sq. ft, which is apparently larger than the grounds for Asatru/Odinism. FAC at 14.

5

> to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

With respects to claims of retaliation, plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory. Pratt v. Rowland, 65 F.3d 802 (9th Cir.1995). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). However, even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810

F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir.1990).

Title II of the ADA "prohibit[s] discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir.2002).  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  Title II of the ADA applies to inmates within state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 1955, 141 L.Ed.2d 215 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir.1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

A "disability" is defined by the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).

Furthermore, prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Even the nonexistence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Mann v. Adams, 855 F.2d at 640. See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir.

1991); Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). Specifically, a failure to process a grievance does not state a constitutional violation. Buckley, supra. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).[2]

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 15-220 requires that an

---

[2] "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct. 1254, 1263-1264, 63 L.Ed.2d 552 (transfer to mental hospital), and Washington, 494 U.S. 210, 221-222, 110 S.Ct. 1028, 1036-1037, 108 L.Ed.2d 178 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

1 amended complaint be complete in itself without reference to any prior pleading.  This is
2 because, as a general rule, an amended complaint supersedes the original complaint.  See <u>Loux v.</u>
3 <u>Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original
4 pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an
5 original complaint, each claim and the involvement of each defendant must be sufficiently
6 alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is not assessed an initial partial filing fee.  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3.  Plaintiff's first amended complaint is dismissed for the reasons discussed above, with leave to file a second amended complaint within twenty-eight days from the date of service of this Order.  Failure to file a second amended complaint will result in a recommendation that these defendants be dismissed from this action.

DATED: August 2, 2010

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:AB
fair1064.b